IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| **STEPHEN ANTHONY NEARY,** | ) | Bankruptcy No. 20-10212-JGR |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| **JOSH MORGAN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Case No. |
| vs. | ) | |
| | ) | |
| **STEPHEN ANTHONY NEARY,** | ) | |
| | ) | |
| Defendant, | ) | |

**COMPLAINT TO DETERMINE DEBT AND DISCHARGEABILITY OF DEBT AND OBJECTION TO DEBTOR'S DISCHARGE**

Plaintiff-Creditor Josh Morgan ("Plaintiff"), by and through his undersigned counsel, Messner Reeves LLP, submits the following Complaint to Determine Dischargeability and Objection to Defendant/Debtor's Discharge of the debts owed to Plaintiff as follows:

**JURISDICTION**

1. This is an adversary proceeding in which Plaintiff is seeking monies paid to Defendant/Debtor ("Defendant"), and his former partner Timothy King ("King"), in relation to Defendant's assurance to construct a single-family residence at the real property located at 7875 Lost Lake Drive, Franktown, CO 80116, Douglas County.

1

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334.

3. This is a core proceeding under Title 28 U.S.C. §157(b)(2)(I).

4. Plaintiff is a creditor and therefore has standing to bring this action pursuant to 11 U.S.C. §523(2)(A) and 523(2)(B)(iii).

COMPLAINT TO DETERMINE DISCHARGEABILITY
PURSUANT TO 11 USC § 523

**FACTUAL BACKGROUND**

5. Plaintiff incorporates by reference the preceding Paragraphs 1-4 of this Complaint.

6. Plaintiff is a citizen of the state of Colorado who currently resides at 15976 East Summit Fox Avenue, Parker, Colorado 80134.

7. Upon information and belief, Defendant is a citizen of the state of Colorado who currently resides at 2349 Rainbow End Point, Colorado Springs, CO 80921.

8. Defendant, along with Timothy R. King, was the owner and a member of Builtrite Builders, LLC, a Colorado limited liability company previously doing business in the State of Colorado as Copperleaf Custom Homes or Copperleaf Homes ("Builtrite").

9. Until recently, Builtrite was in the business of home construction. Builtrite was formed in or about 2008 and operated until 2019, at which time it filed for Chapter 11 bankruptcy on February 11, 2019.

10. At all times relative to this dispute, Defendant was an owner and general partner of Builtrite. In fact, Defendant, along with his partner King, controlled Builtrite and leveraged his position as owner to fraudulently induce Plaintiff into issuing over $65,000.00 in costs to Defendant on Defendant's assurance he would construct a residential home for Plaintiff in the state of Colorado (the "Project").

11. On or about September 6, 2018, Defendant, through Builtrite, entered into a contract for Construction with Plaintiff for the purpose of constructing a residence on the real property located at approximately 7875 Lost Lake Drive, Franktown, CO 80116, Douglas County. A copy of the Contract is attached hereto as **Exhibit A**.

12. Pursuant to the terms of the Contract, Plaintiff obtained a construction loan to cover any additional expenses pertaining to the construction of the home. The loan was obtained through TIAA-Cref (the "Loan").

13. Plaintiff paid a deposit to Defendant in the amount of $30,000.00 in accordance with the Contract. Per the Contract, this deposit was to be "applied to the final Contract Price of the Residence." *See* **Exhibit A** at ¶3(a). However, Defendant abandoned the Project shortly after receiving the deposit, keeping all funds for his personal use.

14. Defendant also caused additional sums in the amount of $71,287.60 for four (4) pre-construction draws against the Loan secured by Plaintiff to construct the Home. In total, Defendant received $101,287.60 in cash from Plaintiff *See* **Exhibit B** attached.

15. Pursuant to the Contract, all draws submitted by Defendant were required to be for "work performed and materials, supplied during the previous month, as well as profit and overhead for the Contractor." *See* **Exhibit A** at ¶3(b). However, there is no record of any materials purchased or any work performed on the Project. Plaintiff was led to believe that the pre-construction draws were mandatory for architectural and testing services for the Project.

16. In addition, subsequent reports from the architect and others working on the project indicate that the total invoice for architect services was $25,000.00 and the related testing services were no more than $10,000.00 for a total of approximately $35,000.00 (the "Estimated Actual Costs").

17. Furthermore, Plaintiff has never received any documentation or evidence suggesting that any of the services related to the Estimated Costs were performed.

18. On multiple occasions, Defendant assured Plaintiff that there were no issues with the Project, everything was on schedule, and that all funds provided by Plaintiff were going directly towards the construction of the Project. At all times, Defendant knew these statements were false.

19. When Plaintiff expressed concerns about the lack of progress on his Project and further concerns regarding calls he had received from other Builtrite customers who expressed similar concerns regarding their projects, Defendant again represented via telephone that the Company was solvent, there were no issues with Plaintiff's Project, and that the Company was actively working on the construction of Plaintiff's home

20. On or about January 15, 2019, Defendant visited Plaintiff to personally assure him all was well with the Company and the Project and promised to provide multiple pieces of documentation including profit and loss statements, balance sheets and insurance documents. These documents were never provided. At all times, Defendant, knowing his statements were false, continued to misrepresent the status of the Company and the Project. Shortly thereafter, Plaintiff received Builtrite's bankruptcy notice via U.S. Mail.

21. On February 11, 2019, Builtrite filed its Chapter 11 Petition in the United States Bankruptcy Court for the District of Colorado (Case No. 19-10938-JGR).

22. When Plaintiff asked to be reimbursed, Defendant declined and stated he could not do anything because the Bankruptcy Court was now in control of all Defendant's funds and assets.

23. Despite the Estimated Actual Costs related to the Project, Defendant, through Builtrite,

issued pre-petition draw requests for $71,287.60, which were paid by Plaintiff. Even assuming that the Estimated Actual Costs were accurate, Defendant received a minimum of $36,287.60 that was not utilized for the work under the Contract and utilized for Defendant's own purposes.

24. This fact is further evidenced by Builtrite's own admission in its Statement of Financial Affairs dated February 25, 2019 and filed as Docket No. 43 (the "Statement"). As noted on the Schedule A/B: Assets, located at Page 14 of the Statement, Builtrite has reported that it has NO cash on hand, that its banking accounts have a zero balance, and that it has "no" deposits or prepayments. *See* Statement at page 14.

25. Defendant filed his Chapter 7 Petition on January 13, 2020, in the United States Bankruptcy Court for the District of Colorado (Case No. 20-10212-JGR).

26. Plaintiff asserts that Defendant and his partner King, under the guise of Builtrite, fraudulently induced Plaintiff to submit a $30,000.00 deposit and received draws that were at least $35,000.00 in excess of its actual charges with no intention to use the same towards any facet of the Project. Defendant used these funds for personal use with full knowledge Plaintiff's Project would never proceed.

**FIRST CLAIM FOR RELIEF**
Relief from Discharge under 11 U.S. § 523 (2)(A)

27. Plaintiff incorporates by reference the preceding Paragraphs 1-26 of this Complaint.

28. As owner and a general partner of Builtrite, Defendant exercised control over all aspects of the business of Builtrite, including but not limited to, correspondence with clients and the payment of profits and/or distributions.

29. Plaintiff is owed amounts related to the agreement for Builtrite to construct a residence

for Plaintiff in the state of Colorado. Defendant intentionally induced multiple payments by abusing his position under the Contract, and through false representations Defendant made to Plaintiff regarding the costs of the Project.

30. Upon information and belief, such false statements or actually fraudulent statements included informing Plaintiff that a $30,000.00 deposit and $71,287.60 in pre-construction draws were necessary to commence work on the Project. At all times, Defendant knew these statements were not true, and the amounts drawn were unnecessary. Furthermore, rather than begin work on the Project as promised, Defendant intentionally converted these funds for his own personal use.

31. Defendant's false representations, statements and actually fraudulent communications have resulted in damage to Plaintiff. Accordingly, amounts due to Plaintiff are non-dischargeable pursuant to the provisions of 11 U.S.C. § 522(2)(A).

## SECOND CLAIM FOR RELIEF
Relief from Discharge under 11 U.S. § 523 (2)(B)(iii)

32. Plaintiff incorporates by reference the preceding Paragraphs 1-31 of this Complaint.

33. As owner and a general partner of Builtrite, Defendant exercised control over all aspects of the business of Builtrite, including but not limited to, the issuance of contracts and/or invoices.

34. Plaintiff is owed amounts related to the Contract for Builtrite to construct a residence for Plaintiff in the state of Colorado. Defendant intentionally, and in writing, induced multiple payments through false representations both via electronic mail and in the Contract to Build including, but not limited to, pre- construction deposits and pre-construction draws.

35. Plaintiff reasonably relied on Defendant's representations in numerous emails in which Defendant assured Plaintiff his Project was not in jeopardy and all funds drawn were necessary for work on the Project.

36. Plaintiff also reasonably relied on Defendant's representations in the written contract, which ensured Plaintiff that all costs and expenses would go directly towards costs associated with the Project.

37. Defendant's fraudulent misrepresentations via email and in the Contract have resulted in damage to Plaintiff. Accordingly, amounts due to Plaintiff are non-dischargeable pursuant to the provisions of 11 U.S.C. § 523(2)(B)(iii).

WHEREFORE, Plaintiff, Josh Morgan, respectfully requests that the Court find:

a. That pursuant to 11 U.S.C. §§ 523(2)(A) and (B)(iii) the debt owed to Plaintiff in an amount to be determined at trial, together with interest, attorneys' fees and costs are not dischargeable in bankruptcy;

b. That judgement be entered in Plaintiff's favor against Defendant in an amount to be determined at trial together with interest thereon at the highest rate permitted by applicable law; and

c. Any such other relief the Court deems just and proper.

Dated: February 18, 2020

Respectfully Submitted,

**MESSNER REEVES LLP**

_/s/ Scott L. Evans_____
Scott L. Evans #25475
Joshua B. Abromovitz #51662
1430 Wynkoop Street Ste. 300
Denver CO 80202
twelch@messner.com
sevans@messner.com
jabromovitz@messner.com